**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dushan Stephan Nickolich, II,<br><br>Plaintiff,<br><br>v.<br><br>Arizona Community Protection and Treatment Center, et al.,<br><br>Defendants. | No.  CV-19-04381-PHX-ROS (JFM)<br><br>**ORDER** |

Plaintiff Dushan Stephan Nickolich, II, who is civilly confined in the Arizona Community Protection and Treatment Center (ACPTC), brought this civil rights action pursuant to 42 U.S.C. § 1983.  Defendant ACPTC Clinical Director Dr. Sheridyn Miller answered but subsequently filed a Motion for Judgment on the Pleadings.  (Doc. 37). Plaintiff opposes the Motion.  (Doc. 44).  Plaintiff also filed a Motion for Summary Judgment (Doc. 58).  Both motions will be denied.

**I.  Background**

In the First Amended Complaint, Plaintiff alleges he previously stipulated to commitment at the ACPTC for the following mental health diagnoses: Exhibitionism and Anti-Social Personality Disorder (ASPD) with Borderline and Narcissistic traits. (Doc. 5 at 4). On September 23, 2015, his Exhibitionism, Borderline, and Narcissistic disorders were, allegedly, "resolved." (*Id.*). Thus, Plaintiff's ASPD is his "sole standing diagnosis." (*Id.*).

On February 15, 2019, during a treatment plan meeting, Plaintiff asked why he was not receiving treatment for his ASPD and Defendant Dr. Miller stated "I do not believe ASPD is treatable." (*Id.*). Thereafter, Plaintiff submitted several written requests to Defendant, asking her to explain why she did not believe his ASPD was treatable, but Defendant did not respond. (*Id.*). Plaintiff alleges he is confined at ACPTC without access to treatment that would eventually allow him to be released back into the community, making his therapeutic confinement punitive and in violation of his due process rights. (*Id.*).

On screening under 28 U.S.C. § 1915A(a), the Court determined Plaintiff stated a Fourteenth Amendment Due Process Claim against Defendant and directed Defendant to answer the claim. (Doc. 6). In its screening order the Court interpreted Plaintiff as seeking only monetary relief although, as addressed below, it is possible Plaintiff also seeks injunctive relief. Defendant answered the complaint and the Court issued a Scheduling Order. (Docs. 8, 9). Defendant subsequently filed a motion for judgment on the pleadings and Plaintiff filed a motion for summary judgment. (Docs. 37, 58).

**II.     Judgment on the Pleadings Standard**

A Rule 12(c) motion for judgment on the pleadings is a "means to challenge the sufficiency of the complaint after an answer has been filed." *New.Net, Inc. v. Lavasoft*, 356 F. Supp.2d 1090, 1115 (C.D. Cal. 2004). It is "functionally identical" to a motion to dismiss. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). Thus, a motion for judgment on the pleadings should be granted only when, taking all the allegations in the complaint as true, there are not enough facts to state a plausible claim for relief. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). In conducting this inquiry, the Court must construe Plaintiff's *pro se* filings liberally and "afford [Plaintiff] the benefit of any doubt." *Id.*

**III.    Discussion**

Defendant posits four bases for judgment on the pleadings: (1) the Court should abstain from exercising jurisdiction over this action pursuant to the *Younger* abstention

doctrine, (2) Plaintiff's claims should be dismissed as *Heck*-barred, (3) Plaintiff fails to state a claim, and (4) Defendant is entitled to qualified immunity.

### A. *Younger* Abstention

The abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971), prevents a federal court in most circumstances from directly interceding in ongoing state criminal or quasi-criminal proceedings. If *Younger* abstention applies, "claims for injunctive and declaratory relief are typically dismissed." *Herrera v. City of Palmdale*, 918 F.3d 1037, 1042 (9th Cir. 2019). But "when a district court abstains from considering a *damages* claim under *Younger*, it must *stay*—rather than dismiss—the damages action until state proceedings conclude." *Id.*

Defendant acknowledges the type of relief being sought is important in the context of applying *Younger* abstention but argues "Plaintiff's action is one for injunctive *and* monetary relief," such that *Younger* abstention should apply. (Doc. 37 at 6). In other words, Defendant seems to believe Plaintiff is seeking injunctive relief and that request means *Younger* abstention would allow the Court to grant judgment, not merely stay, the entire action, including Plaintiff's claim seeking money damages. Defendant cites no authority for this proposition and, in fact, the Ninth Circuit recently reiterated its long-held position that *Younger* abstention requires dismissal of any request for injunctive relief but requests for money damages must only be stayed. *Herrera*, 918 F.3d at 1048. While it is not entirely clear whether Plaintiff is seeking injunctive relief, there is no doubt he is seeking money damages. Therefore, even if *Younger* were found applicable to this case, the Court would have to stay Plaintiff's claim seeking money damages, not grant judgment in Defendant's favor.

While the result under *Younger* abstention differs depending on the type of relief being sought, determining if *Younger* applies is the same regardless of the relief sought. "*Younger* abstention is appropriate when: (1) there is an ongoing state judicial proceeding; (2) the proceeding implicates important state interests; (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges; and (4) the requested relief seeks

to enjoin or has the practical effect of enjoining the ongoing state judicial proceeding." *Page v. King*, 932 F.3d 898, 901-02 (9th Cir. 2019). Even assuming Defendant is correct that the first and second prongs are met, it is unclear if Plaintiff has an "adequate opportunity" to raise his constitutional challenges in state court. *Id.* Therefore, the Court will not abstain at this point.

According to Defendant, the requirement that Plaintiff have an adequate opportunity to raise constitutional challenges in the state litigation is met based on Arizona's Sexually Violent Persons Act ("the Act"), A.R.S. § 36-3701, *et seq*. The Act states in general terms that an individual who is "committed or conditionally released to a less restrictive alternative pursuant to [the Act] does not forfeit any legal right," including "any right that is available for the purpose of obtaining release from confinement, including the right to petition for a writ of habeas corpus." Ariz. Rev. Stat. § 36-3712(A) & (D). The Act also "does not prohibit the committed person from annually petitioning the court for conditional release to a less restrictive alternative without the approval of the superintendent of the state hospital or the director of the department of health services." *Id.* § 36-3709(B).

From these provisions, Defendant extrapolates, but points to no authority to show, that civilly committed individuals such as Plaintiff have adequate opportunity in their SVP proceedings to raise constitutional challenges related to their treatment. Defendant argues, for instance, that "[i]f an SVP believes he is not receiving constitutionally adequate treatment, he may request the appointment of an independent competent professional," after which the state court "may then determine the constitutionality of the treatment based on reports and opinions of mental health professionals." (Doc. 37 at 4).

The statutory provisions to which Defendant cites, however, only provide that an indigent petitioner or the State may request the appointment of a competent professional when seeking or defending against a petition for conditional release. The statutory provisions say nothing about an SVP's right to request an independent professional to assess whether he is receiving constitutionally adequate treatment while in ACPTC custody. *See* Ariz. Rev. Stat. §§ 36-3709, 3714. Apart from showing that SVPs such as

Plaintiff may file separate habeas corpus petitions or may, as part of their SVP proceedings, bring annual challenges to their continued confinement, the provisions to which Defendant cites do not show that individuals committed to ACPTC custody have any recourse within their state court SVP proceedings to raise constitutional challenges with respect to the care or lack of care they are receiving during their confinements. Nor has Defendant pointed to any Arizona case law, court records, or other authority demonstrating that Plaintiff has an adequate opportunity to raise constitutional challenges related to his treatment at the ACPTC in the context of his state SVP proceedings.

While Defendant does not cite authority, it appears the Arizona Court of Appeals has concluded an individual cannot raise challenges to the adequacy of treatment in his SVP proceedings. *In re Commitment of Jaramillo*, 278 P.3d 1284 (Ariz. Ct. App. 2012). According to that court, the state trial court handling the SVP proceeding has no "authority to mandate a particular treatment plan." *Id.* at 1286. If an individual believes his treatment is inadequate, instead of seeking relief in the SVP proceeding he must "via special action, bring a claim that a government official has failed to fulfill a duty required by law." *Id.* at 1287. Pursuant to that view, an individual such as Plaintiff would need to initiate an entirely separate action in state court to challenge allegedly inadequate treatment. *Younger* abstention does not appear applicable when there is merely the possibility of asserting constitutional rights through future state-court litigation. *See Agriesti v. MGM Grand Hotels, Inc.*, 53 F.3d 1000, 1002 (9th Cir. 1995) (noting "*Younger* abstention does, in fact, depend on the 'technicality' of ongoing judicial proceedings").

Based on *In re Commitment of Jaramillo* and Defendant's failure to cite any authority to the contrary, Plaintiff does not have the ability to raise constitutional challenges to his treatment in the SVP proceeding. Therefore, *Younger* abstention is not appropriate.

**B.** *Heck* **Bar**

Pursuant to the Supreme Court's ruling in *Heck v. Humphrey*, a prisoner's claim for damages cannot be brought under 42 U.S.C. § 1983 if "a judgment in favor of the plaintiff

would necessarily imply the invalidity of his conviction or sentence," unless the prisoner demonstrates that the conviction or sentence has previously been reversed, expunged, or otherwise invalidated. 512 U.S. 477, 486-87 (1994). *See also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)— *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration."); *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996) ("There is no question that *Heck* bars [plaintiff's] claims that defendants lacked probable cause to arrest him and brought unfounded charges against him.").

Defendant argues that *Heck* applies here because "[a] ruling in Plaintiff's favor would necessarily imply the invalidity of his civil commitment." (Doc. 37 at 6). Defendant is mistaken as the result of the present suit will have no impact on the validity of Plaintiff's commitment. In this suit, Plaintiff is not objecting to his civil commitment nor does he seek release. Instead, he seeks only relief based on Defendant's alleged failure to treat his ASPD. A finding in Plaintiff's favor that he was not provided sufficient treatment for his ASPD would only speak to the conditions of Plaintiff's confinement. It would not, as Defendant implies, "demonstrate the invalidity of [Plaintiff's] confinement or its duration." *Smithart*, 79 F.3d at 952. *Heck* does not pose a bar to Plaintiff's due process claim, and the Court will not dismiss this claim on *Heck* grounds.

### C. Failure to State a Claim

Next, Defendant argues that Plaintiff fails to state a § 1983 claim based on failure to treat. (Doc. 37 at 7). Generally, in the criminal incarceration context, a prisoner "is entitled to that psychological or psychiatric treatment which may be provided upon a reasonable cost and time basis, the essential test being one of medical necessity and not simply that which may be considered desirable." *Ohlinger v. Watson*, 652 F.2d 775, 777 (9th Cir. 1980). Where, however, an individual is committed based on a non-criminal basis, "'due process requires that the nature and duration of commitment bear some

reasonable relation to the purpose for which the individual is committed.'" *Id.* at 778 (quoting *Jackson v. Indiana*, 406 U.S. 715, 738, (1971)). Thus, a person committed based on mental incapacity has a due process right to receive "such individual treatment as will give [him] a realistic opportunity to be cured or to improve his . . . mental condition . . . because, absent treatment, [he] could be held indefinitely as a result of [his] mental illness." *Ohlinger*, 652 F.2d at 778 (internal citations omitted).

Pursuant to *Ohlinger*, "the Fourteenth Amendment Due Process Clause requires states to provide civilly-committed persons with access to mental health treatment that gives them a realistic opportunity to be cured and released." *Sharp v. Weston*, 233 F.3d 1166, 1172 (9th Cir. 2000). And while "the state enjoys wide latitude in developing treatment regimens, the courts may take action when there is a substantial departure from accepted professional judgment or when there has been no exercise of professional judgment at all." *Id.* at 1171.

Defendant argues Plaintiff fails to state a claim because his sole allegation against her is that she does not believe ASPD is treatable, which Plaintiff equates with a refusal to treat. (Doc. 37 at 8). Defendant argues this allegation is insufficient to state a due process violation because Plaintiff is only constitutionally entitled to treatment as determined by a mental health professional, not to self-directed treatment. (*Id.*). But Plaintiff is not claiming a constitutional right to direct his own treatment. He is merely alleging the treatment provided by Defendant, more precisely the complete lack thereof, fell below the constitutional minimum.

Plaintiff alleges Defendant told him she believed ASPD was untreatable. (Doc. 5 at 4). He also alleges that, as of September 23, 2015, all the other disorders that led to his civil commitment had been "resolved." (*Id.*). Construing these facts in Plaintiff's favor, Plaintiff continued to be confined in the ACPTC for years, ostensibly for treatment of a disorder for which he was not receiving treatment and which Defendant stated, without explanation, was untreatable. Taken as true, these allegations plausibly state a claim that Defendant's failure to provide *any* treatment for Plaintiff's ASPD substantially deviated

from the accepted professional judgment, practice, or standards of care normally expected of an appropriate professional in her position.[1]

Defendant also incorrectly argues that Plaintiff has not alleged any injury based on Defendant's alleged due process violation. To the contrary, Plaintiff alleges that, as long as Defendant refuses to treat his ASPD, Plaintiff will be unable to be rehabilitated and released, "turning his therapeutic commitment into a punitive confinement." (Doc. 5 at 4). Again, taking Plaintiff's factual allegations as true, Plaintiff has already remained civilly committed for years after his other mental health disorders were "resolved." Absent a treatment plan for his ASPD or any explanation showing whether Defendant's opinion that it is untreatable comports with professional standards for mental health treatment, Plaintiff is simply left without an opportunity to cure or improve his mental illness and no prospect of ever being released. These facts constitute significant injury stemming from Defendant's alleged failure to treat Plaintiff's ASPD.

### D. Qualified Immunity

Defendant's final argument is the Court must dismiss this action on the ground that Defendant is entitled to qualified immunity. (Doc. 37 at 10). But qualified immunity does not apply to requests for injunctive relief. *See Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012) (qualified immunity does not apply to claims seeking injunctive relief). Thus, Defendant's own recognition that "Plaintiff's action is one for injunctive *and* monetary relief" means qualified immunity would not bar this suit in its entirety. (Doc. 37 at 6). Assuming Defendant meant to limit her qualified immunity argument to the request for money damages, qualified immunity is not appropriate at this early stage.

Defendant is entitled to qualified immunity unless Plaintiff's allegations establish Defendant's conduct violated a constitutional right and that right was clearly established at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 230-32, 235-36 (2009).

---

[1] In determining Plaintiff has stated a claim, the Court is not determining that effective treatment does, in fact, exist for ASPD. At this early stage in the litigation, the Court is merely construing Plaintiff's *pro se* allegations liberally such that he will have the opportunity to attempt to prove that Defendant's treatment-related decisions were outside "accepted professional judgment." *Sharp v. Weston*, 233 F.3d 1166, 1171 (9th Cir. 2000).

Whether a right was clearly established must be determined "in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Defendant does not develop her qualified immunity argument in sufficient detail for the Court to meaningfully address the issue.

In seeking judgment on the pleadings based on qualified immunity, Defendant's argument, in its entirety is:

> Here, Plaintiff alleges that Dr. Miller violated his right to "adequate and effective treatment." (Doc. 5 at 4). This is not a clearly established right and Plaintiff has identified no other clearly established federal right that was violated. Dr. Miller conduct was not unconstitutional under *Lane*[2] and *Youngberg*.[3] Even if this Court were to apply an "adequate and effective" treatment standard, Dr. Miller is entitled to qualified immunity and this Court should dismiss this action.

(Doc. 37 at 10).

Contrary to Defendant's position, there is a clearly established federal right for Plaintiff to receive appropriate treatment. As the Ninth Circuit established years before the underlying events, states must "provide civilly-committed persons with access to mental health treatment" and the treatment must not be a "substantial departure from accepted professional judgment." *Sharp v. Weston*, 233 F.3d 1166, 1171-72 (9th Cir. 2000). Plaintiff alleges Defendant has refused to provide *any* treatment. Viewed in the light most favorable to Plaintiff, refusal to provide any treatment is a violation of clearly established law. Accordingly, qualified immunity is not appropriate.

The conclusion that qualified immunity does not apply is based on the extremely limited record the Court can consider at this point in the case. Thus, the rejection of qualified immunity at this stage "sheds little light on whether [Defendant] might ultimately be entitled to qualified immunity." *Keates v. Koile*, 883 F.3d 1228, 1235 (9th Cir. 2018). Once the facts are developed, the qualified immunity analysis likely will be quite different.

---

[2] *Lane v. Williams*, 689 F.3d 879 (7th Cir. 2012).

[3] *Youngberg v. Romeo*, 457 U.S. 307 (1982).

### IV. Plaintiff's Motion for Summary Judgment

Also before the Court is Plaintiff's Motion for Summary Judgment (Doc. 58). This is the eighth such motion for summary judgment Plaintiff has filed, with his previous attempts all being stricken for failure to comply with Federal and Local Rules of Civil Procedure for a motion for summary judgment. (*See* Docs. 22, 24, 27, 41, 46, 51, 54).

The Court has already explained in its Orders striking Plaintiff's prior deficient motions for summary judgment what is required for filing such a motion. In particular, the Court has directed that Plaintiff must file a separate statement of facts, with each discrete fact set forth in a separately numbered paragraph that contains a reference to the evidence upon which that fact relies, and a separate memorandum of law, arguing the basis for his motion and referencing the supporting paragraphs in his separate statement of facts. (*See, e.g.*, Doc. 53). Plaintiff's latest Motion for Summary Judgment fails to set forth discrete facts relevant to his confinement and due process claim, mixes facts and arguments together, and once again falls far short of meeting the requirements set forth in the Court's prior Orders. The Court will therefore summarily deny Plaintiff's Motion for Summary Judgment and will discharge Defendant of her duty to respond to that Motion.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendant's Motion for Judgment on the Pleadings (Doc. 37) and Plaintiff's Motion for Summary Judgment (Doc. 58).

(2) Defendant's Motion for Judgment on the Pleadings (Doc. 37) is **denied**.

(3) Plaintiff's Motion for Summary Judgment (Doc. 58) is **denied**; Defendant is **discharged** of any obligation to respond to that Motion.

Dated this 7th day of April, 2021.

Honorable Roslyn O. Silver
Senior United States District Judge